UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIJI YU,

                              Plaintiff,

          v.

KNIGHTED LLC, an Intelligrated Company,

                              Defendant.

No. 15-CV-9340 (KMK)

OPINION & ORDER

Appearances:

Siji Yu
Hopewell Junction, NY
*Pro Se Plaintiff*

David A. Skidmore, Jr., Esq.
Jennifer A. Rulon, Esq.
Frost Brown Todd LLC
Cincinnati, OH
*Counsel for Defendant*

Sharon S. Cohen, Esq.
Shira Franco, Esq.
Davis & Gilbert LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Siji Yu ("Plaintiff") filed this Action pursuant to Title VII of the Civil

Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et

seq., 42 U.S.C. §§ 1981 and 1983, and the New York State Human Rights Law ("NYSHRL")

against Knighted LLC ("Defendant"), alleging that it discriminated and retaliated against him

and failed to pay him for the overtime hours he worked.  (*See generally* Compl. (Dkt. No. 1).)

Before the Court is Defendant's Motion To Dismiss the Complaint (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 22.)  For the reasons explained herein, Defendant's Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purpose of resolving the Motion.

Plaintiff, an Asian-American male "of Chinese national origin," was hired by Defendant in July 2013 to work as a "full[-]time, permanent employee" in Defendant's Ossining, New York office as a Senior Database Administrator.  (Compl. ¶¶ 8–9, 17–18, 128.)[1]  He was paid $115,000 a year.  (*Id.* ¶ 95.)  Plaintiff was the sole employee with responsibility for certain of Defendant's databases.  (*Id.* ¶ 18.)  In October 2013, Defendant moved its office to Elmsford, New York.  (*Id.* ¶ 19.)  Plaintiff worked in that office until his termination in August 2014.  (*Id.* ¶¶ 19, 85.)  During his tenure, he was appreciated by his colleagues and customers, and, in 2014, was rated at the top score in numerous categories during an annual review by his two immediate supervisors.  (*Id.* ¶¶ 20–22.)

In the middle of February 2014, a senior vice president held a meeting with all of the employees at Defendant's Elmsford office.  (*Id.* ¶ 23.)  The senior vice president announced that all associates had to work an extra 10 hours per week regardless of employee status, such as whether the employee was "exempt," and promised the employees overtime pay.  (*Id.* ¶ 24.)

---

[1] Plaintiff has submitted a single submission containing two different documents purporting to be the complaint.  (*See* Dkt. No. 1.)  The first is titled a "Complaint for Employment Discrimination."  The second, beginning at page 5 of the submission, is titled "Complaint."  All of the citations to the Complaint in this Opinion refer to latter document.

Plaintiff alleges that he was an exempt employee.  (*Id.*)[2]  A few weeks later, Plaintiff's immediate supervisor, a vice president, confirmed the overtime requirement and promised overtime pay regardless of an employee's status.  (*Id.* ¶ 25.)

In early April 2014, Plaintiff was introduced to Darryl Lister ("Lister").  (*Id.* ¶ 26.)  Lister then became Plaintiff's third immediate supervisor by approving Plaintiff's weekly timesheet. (*Id.* ¶ 29.)  Plaintiff only met Lister in person once because Lister's office was in Baton Rouge, Louisiana, and then, Atlanta, Georgia.  (*Id.* ¶¶ 28, 32.)  In May 2014, Plaintiff and Lister spoke about the extra 10-hour-per-week requirement and the fact that Plaintiff had not yet received any overtime compensation.  (*Id.* ¶ 33.)  Lister instructed Plaintiff to continue working the extra 10 hours per week but without the promised overtime payments or further explanation.  (*Id.* ¶ 34.) Plaintiff told Lister that this arrangement was discriminatory because other younger associates in the Elmsford office had been paid for the overtime hours they worked.  (*Id.* ¶ 35.)

Sometime before July 1, 2014, Plaintiff asked Lister about his annual salary raise.  (*Id.* ¶ 37.)  Lister did not respond to Plaintiff's inquiry.  (*Id.* ¶ 38.)  At this time, Lister had four immediate subordinates—Plaintiff and three other white employees.  (*Id.* ¶¶ 40–41.)  Plaintiff alleges that the three white employees received salary raises, but he did not.  (*Id.* ¶ 41.)  Plaintiff complained to Lister about not receiving a raise and asked him to "reconsider and correct his illegal discriminatory conduct."  (*Id.* ¶ 43.)

Shortly after Plaintiff made these complaints, Lister hired a new employee who was "non Asian-American" and "much younger" than Plaintiff.  (*Id.* ¶ 44.)  The employee was hired to run Defendant's "performance [e]ngineering [department]," (*id.* ¶ 45 (internal quotation marks and

---

[2] As explained in further detail below, it is unclear what Plaintiff means when he states that he was an exempt employee.

italics omitted)), and took over some of Plaintiff's responsibilities, (*id.* ¶ 47).  Plaintiff alleges

that he was overlooked for this position and was effectively demoted as a result of the new

employee's responsibilities.  (*Id.* ¶¶ 46, 48.)  Plaintiff complained that Lister's actions were

discriminatory and retaliatory.  (*Id.* ¶ 49.)

On August 11, 2014, Plaintiff attended a meeting to discuss a research project.  (*Id.* ¶ 50.)

As soon as he sat down, Alice Kijak ("Kijak"), a manager in Defendant's Elmsford office,

showed him an "EMPLOYEE REPRIMAND RECORD" from Lister.  (*Id.* ¶ 51.)  Kijak

explained that Lister told her to present the reprimand to Plaintiff.  (*Id.* ¶ 52.)  After reviewing

the document, Plaintiff immediately contacted Defendant's Human Resources Department

("HR").  (*Id.* ¶ 54.)  He spoke to Katie Becker ("Becker") and allegedly told her that Lister

"discriminated and retaliated against [him] on many occasions, such as unpaid promised

overtime pay, overlooked annual salary raise, overlooked promotion, effective demotion, [and]

manufactur[ing] [a] written warning" in violation of his legally protected rights.  (*Id.* ¶ 55.)

Becker promised to investigate Plaintiff's complaints.  (*Id.* ¶ 56.)  Plaintiff "explicitly stated"

that the investigation should be kept confidential.  (*Id.* ¶ 57.)  Becker told Plaintiff not to contact

Lister regarding the reprimand and to file a written complaint as soon as possible.  (*Id.* ¶¶ 58,

63.)

On that same day, Lister sent Plaintiff a communication regarding a conference call

scheduled for 4 p.m.  (*Id.* ¶ 64.)[3]  Plaintiff replied to the communication by stating that he had

been in contact with HR regarding the reprimand.  (*Id.* ¶¶ 65–67.)

---

[3] The Court cannot determine from the Complaint how Lister communicated with
Plaintiff.

Minutes after 4 p.m., Plaintiff was forced into a room with two managers.  (*Id.* ¶¶ 69–70.) Lister and Becker were listening in over the phone.  (*Id.* ¶ 70.)  During the meeting, which Plaintiff recorded, Becker announced that Plaintiff was suspended indefinitely so that he could file a formal complaint against Lister and so Defendant could investigate the circumstances giving rise to the reprimand.  (*Id.* ¶¶ 72–75.)  Plaintiff immediately protested and requested that Becker reconsider.  (*Id.* ¶¶ 76–77.)

After leaving the meeting, Plaintiff called Becker's manager, Bernie Hess ("Hess").  (*Id.* ¶ 81.)  Plaintiff allegedly told Hess about his complaints and the substance of the 4 p.m. conference call.  (*Id.* ¶¶ 81–83.)  Hess told Plaintiff to file a written discrimination complaint and that HR would investigate Plaintiff's claim and get back to him the following day.  (*Id.* ¶ 84.)

Early the next day, August 12, 2014, Hess called Plaintiff and told him that his employment was terminated effective immediately, even though Plaintiff had not yet filed his written complaint nor had Defendant conducted an investigation into his claims.  (*Id.* ¶ 85.) Plaintiff subsequently sent a written discrimination complaint to Hess, Becker, and a third employee, and asked that Defendant investigate his claims.  (*Id.* ¶¶ 90–91.)  Plaintiff never heard back from anyone.  (*Id.* ¶ 94.)

After being terminated, Plaintiff filed for unemployment benefits.  (*Id.* ¶ 95.)  Defendant opposed Plaintiff's application because it claimed that Plaintiff was "terminated for his misconduct at the 4 [p.m.] conference call."  (*Id.* ¶ 96.)  The Department of Labor found that Plaintiff could not receive unemployment benefits because Plaintiff was fired for misconduct. (*Id.* ¶ 97.)  Plaintiff appealed that determination and was ultimately successful in obtaining unemployment benefits.  (*Id.* ¶¶ 117, 122.)

In February 2015, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") against Defendant, alleging that it discriminated against him on the basis of "national origin, race/color," and age, and retaliated against him for making complaints about that discrimination.  (Decl. of Shira Franco, Esq., in Supp. of Def.'s Mot. To Dismiss ("Franco Decl.") Ex. 2, at 1 ("NYSDHR Determination & Order") (Dkt. No. 23).)  The NYSDHR determined "that there [was] NO PROBABLE CAUSE to believe that [Defendant] ha[d] engaged in or is engaging in the unlawful discriminatory practice complained of."  (NYSDHR Determination & Order 1; *see also id.* at 2 ("There is a lack of evidence to establish Complainant was discriminated against because he is Chinese, Asian, 59 years old . . . and opposed discrimination/retaliation.").)  In August 2015, the Equal Employment Opportunity Commission adopted the findings of the NYSDHR and sent to Plaintiff a notice of his right to sue.  (Franco Decl. Ex. 3.)  Plaintiff filed an Article 78 petition in the New York State Supreme Court ("NYS Supreme Court") challenging the NYSDHR's determination.  (Franco Decl. Ex. 4.)  In March 2016, after Plaintiff filed his Complaint in this case, the NYS Supreme Court denied the petition, concluding that "the determination of no probable cause made by the . . . New York State Department of Human Rights was not arbitrary and capricious or lacking a rational basis in the record."  (Reply Decl. of Shira Franco, Esq., in Supp. of Mot. To Dismiss ("Franco Reply Decl.") Ex. 1, at 3 ("NYS Supreme Court Judgment, Decision & Order") (Dkt. No. 29).)  The court further determined that Plaintiff had a full opportunity to present his case to the NYSDHR. (NYS Supreme Court Judgment, Decision & Order 3.)

B.  Procedural History

Plaintiff filed his Complaint on November 30, 2015.  (*See* Dkt. No. 1.)  Pursuant to a memo endorsement, (Dkt. No. 21), Defendant filed its Motion and supporting papers on March

15, 2016, (Dkt. Nos. 22–26).  Plaintiff filed opposition papers on April 15, 2016.  (Dkt. No. 27.)
On April 29, 2016, Defendant filed a reply brief and a declaration informing the Court that the
NYS Supreme Court upheld the NYDHRS's finding of no probable cause.  (Dkt. Nos. 28–29.)
In light of the NYS Supreme Court's decision, Defendant argued, for the first time, that Plaintiff
was collaterally estopped from bringing his discrimination and retaliation claims in federal court.
(Def.'s Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Reply") 2–3 (Dkt. No. 28).)
Because this argument was not raised in Defendant's opening brief, the Court solicited a sur-
reply from Plaintiff.  (*See* Dkt. No. 31.)  Plaintiff filed his sur-reply on December 7, 2016.  (Dkt.
No. 32.)

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject
matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'"
*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn.
June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also
Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same),
*aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept
all factual allegations in the complaint as true, and draw inferences from those allegations in the
light most favorable to the plaintiff."  *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation
marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1
(D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes
the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction
exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule

12(b)(6)." *Gonzalez*, 2014 WL 2475893, at \*2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at \*9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of*

*Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks

omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014)

("[W]here subject matter jurisdiction is contested a district court is permitted to consider

evidence outside the pleadings, such as affidavits and exhibits.").

### 2. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation, alteration,

and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and

internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once

a claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his

or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed,"

*id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim

for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense. But where the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at

*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122

n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party

in his papers opposing the motion" (italics omitted)).  However, "the liberal treatment afforded to

pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural

and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal

quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir.

2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules

and to comply with them." (italics and internal quotation marks omitted)).

    B.  Analysis

       Defendant principally contends that Plaintiff's discrimination and retaliation claims are

barred by collateral estoppel, that Plaintiff has failed to plead an FLSA claim, and that Plaintiff's

§ 1983 claim should be dismissed because Defendant is not a state actor.  The Court addresses

these arguments in turn below.

      1.  Collateral Estoppel

       "The Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal court to give

the same preclusive effect to a state-court judgment as another court of that State would give."

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (internal quotation

marks omitted); *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) ("A federal court must

apply the collateral estoppel rules of the state that rendered a prior judgment on the same issues

currently before the court.").  In this case, New York is the relevant state as Defendant contends

that the NYS Supreme Court's judgment bars Plaintiff's discrimination and retaliation claims.

*See Colon v. Coughlin*, 58 F.3d 865, 869 n.2 (2d Cir. 1995) ("We . . . look to New York law to determine the effect of [the plaintiff]'s Article 78 proceeding.").

"Under New York law, collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *LaFleur*, 300 F.3d at 271 (internal quotation marks omitted). "When it applies, collateral estoppel divests a federal district court of subject matter jurisdiction over the precluded issue." *Sank v. City Univ. of N.Y.*, No. 10-CV-4975, 2011 WL 5120668, at *3 (S.D.N.Y. Oct. 28, 2011). New York courts apply the doctrine "if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon*, 58 F.3d at 869; *see also Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005) (same). It must be "quite clear that these requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." *Colon*, 58 F.3d at 869 (internal quotation marks omitted). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Id.* However, "[t]he doctrine of collateral estoppel 'is grounded on concepts of fairness and should not be rigidly or mechanically applied.'" *LaFleur*, 300 F.3d at 271 (quoting *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 636 (N.Y. 1990)).

The Supreme Court has held that so long as a plaintiff has had a full and fair opportunity to litigate his claims, a state-court judgment upholding a finding by the NYSDHR that no probable cause exists to believe that the plaintiff was discriminated against, bars the plaintiff

from relitigating those same claims in federal court.  *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466–67 (1982).  In *Kremer*, the plaintiff was barred from litigating his discrimination claim in federal court precisely because "the Appellate Division of the New York Supreme Court . . . issued a judgment affirming the decision" of the NYSDHR Appeals Board, which found that the plaintiff's termination was "not the product of the discrimination that he had alleged."  *Id.* at 466; *see also id.* at 466–67 ("There is no question [that the Appellate Division's] judicial determination precludes [the plaintiff] from bringing any other action, civil or criminal, based upon the same grievance in the New York courts.  By its terms, therefore, [42 U.S.C.] § 1738 would appear to preclude [the plaintiff] from relitigating the same question in federal court." (internal quotation marks and citation omitted)); *Yan Yam Koo v. Dep't of Bldgs. of City of N.Y.*, 218 F. App'x 97, 99 (2d Cir. 2007) ("While the [NYSDHR] determination in and of itself did not preclude [the plaintiff's] action, preclusive effect attached once the state court reviewed and affirmed the [NY]SDHR's finding of no probable cause."); *Richardson v. City of New York*, No. 97-CV-7676, 2004 WL 325631, at *1 (S.D.N.Y. Feb. 20, 2004) ("[W]here an Article 78 petition seeks annulment of a[n] employment disciplinary decision on the ground that it was discriminatory or retaliatory, a determination by the state courts that the decision was supported by substantial evidence necessarily implies rejection of the claim that the termination was discriminatory and retaliatory and thus forecloses a similar contention in a subsequent federal action." (alterations and internal quotation marks omitted)).

Collateral estoppel may bar subsequent litigation in federal court even if the plaintiff raises a federal cause of action not raised before the NYSDHR.  In *Kremer*, the Supreme Court explained:

> Although the claims presented to the NY[SDHR] and subsequently reviewed by the Appellate Division were necessarily based on New York law, the alleged

13

> discriminatory acts are prohibited by both federal and state laws.  The elements of a successful employment discrimination claim are virtually identical; [the plaintiff] could not succeed on a Title VII claim consistently with the judgment of the NY[SDHR] that there is no reason to believe he was terminated or not rehired because of age or religion.  The Appellate Division's affirmance of the NY[SDHR]'s dismissal necessarily decided that [the plaintiff]'s claim under New York law was meritless, and it thus also decided that a Title VII claim arising from the same events would be equally meritless.

456 U.S. at 479–80 (footnote omitted); *see also Sank*, 2011 WL 5120668, at *4 ("Because the elements of a successful employment discrimination claim are identical under both federal and state law, [the plaintiff] cannot succeed in federal court on a Title VII, ADEA[,] or ADA claim in a manner consistent with the judgment of the NYSDHR and the New York Supreme Court, which both held that there was no reason to believe that the reduction of [the plaintiff]'s on-campus storage space was an actionable adverse employment action, or due to discrimination or retaliation.").

Typically, collateral estoppel is "pled as [an] affirmative defense[] and thus . . . will [not] serve as the basis for a pre-answer motion to dismiss."  *Magi XXI, Inc. v. Stato Della Città Del Vaticano*, 22 F. Supp. 3d 195, 201 (E.D.N.Y. 2014).  It is, however, "well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  Therefore, the defense "may be brought, under appropriate circumstances, . . . via a motion to dismiss." *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 314, 331 (E.D.N.Y. 2013) (internal quotation marks omitted); *see also, e.g.*, *Mejia v. N.Y.C. Health & Hosps. Corp.*, 622 F. App'x 70 (2d Cir. 2015) (affirming dismissal of complaint on collateral estoppel grounds based upon NYSDHR and NYS Supreme Court decisions).  "[I]n discrimination actions, courts regularly take notice of NY[S]DHR filings and determinations relating to a plaintiff's claims."  *Macer v. Bertucci's Corp.*, No. 13-CV-2994, 2013 WL 6235607, at *1 n.1 (E.D.N.Y. Dec. 3, 2013).

14

Here, Plaintiff alleges that Defendant discriminated and/or retaliated against him in violation of Title VII, the ADEA, the NYSHRL, and 42 U.S.C. § 1981, the last of which prohibits discrimination based on race in the making and enforcement of contracts.  Matters of public record reveal that Plaintiff is collaterally estopped from litigating these claims in federal court.

Plaintiff filed a complaint with the NYSDHR alleging that Defendant discriminated against him on the basis of his national origin, race/color, and age, and retaliated against him for making complaints about that discrimination.  (NYSDHR Determination & Order 1.)  The NYSDHR found "that there [was] NO PROBABLE CAUSE to believe that [Defendant] ha[d] engaged in or is engaging in the unlawful discriminatory practice complained of."  (*Id.*)  Plaintiff thereafter appealed that determination to the NYS Supreme Court, which held that "the determination of no probable cause made by the . . . New York State Department of Human Rights was not arbitrary and capricious or lacking a rational basis in the record."  (NYS Supreme Court Judgment, Decision & Order 3.)  Based on these records, it is clear that Plaintiff has already had an opportunity to litigate the discrimination and retaliation claims he is now raising in federal court.

While it does not appear that Plaintiff specifically raised his Title VII or ADEA claims in state court, "[b]ecause the elements of a successful employment discrimination claim are identical under both federal and state law, [Plaintiff] cannot succeed in federal court on a Title VII . . . [or] ADEA . . . claim in a manner consistent with the judgment of the NYSDHR and the New York Supreme Court."  *Sank*, 2011 WL 5120668, at *4.  The same analysis applies to Plaintiff's § 1981 claim because a plaintiff asserting a cause of action under that section "must plead facts which establish that [the] defendants' actions were racially motivated and

15

purposefully discriminatory," *Waldron v. Rotzler*, 862 F. Supp. 763, 768 (N.D.N.Y. 1994), and the NYSDHR and NYS Supreme Court have determined that Defendant's actions were not discriminatory, *see Prasad v. Wassaic Dev. Ctr.*, 546 F. Supp. 679, 680 (S.D.N.Y. 1982) (finding that a § 1981 claim was barred by collateral estoppel where a New York state court found that the plaintiff's discrimination claim was unfounded).

Nor is there any evidence Plaintiff lacked a full and fair opportunity to litigate his claims at the state level.  Plaintiff argues that he filed an appeal with the NYS Supreme Court "to correct [the] one-sided conduct[] of the NYS[D]HR" and that the appeal is still in process, (Pl.'s Sur-reply in Opp'n to Def.'s Mot. To Dismiss 1–2 (Dkt. No. 32)), but as already discussed, the State Supreme Court issued a decision upholding the NYSDHR's determination.  It also held that Plaintiff "had a full opportunity to present his case to the [NYS]DHR."  (NYS Supreme Court Judgment, Decision & Order 3.)  The Court thus finds that Plaintiff had a full and fair opportunity to litigate his discrimination and retaliation claims in state court because nothing in the record suggests that he lacked such an opportunity.  *See Kremer*, 546 U.S. at 483 ("We have little doubt that [the] [p]laintiff received all the process that was constitutionally required in rejecting his claim that he had been discriminatorily discharged contrary to the statute."); *Barnes v. N.Y. State Div. of Human Rights*, No. 14-CV-2388, 2016 WL 5477737, at *3 (S.D.N.Y. Sept. 29, 2016) (finding collateral estoppel applicable because "[t]he record demonstrate[d] that [the plaintiff] had a full and fair opportunity to present his complaint to the NYSDHR and . . . in state court").

Accordingly, Plaintiff's discrimination and retaliation claims are dismissed with prejudice.[4]

### 2. Plaintiff's FLSA Claim

"Congress enacted the FLSA in 1938 to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010) (quoting 29 U.S.C. § 202(a)). "Section 207(a)(1) of [the] FLSA requires that, 'for a workweek longer than [40] hours,' an employee who works 'in excess of' [40] hours shall be compensated for that excess work 'at a rate not less than one and one-half times the regular rate at which he is employed." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). This general rule does not apply, however, to several types of employees, including individuals who are employed "in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1); *see Reiseck*, 591 F.3d at 104, and certain highly compensated employees, 29 C.F.R. § 541.601(a); *see Bellone v. Kraft Power Corp.*, No. 15-CV-3168, 2016 WL 2992126, at *4 (E.D.N.Y. May 23, 2016) ("The FLSA provides numerous exemptions to the time-and-a-half overtime requirement, one of which is the 'highly compensated employees' . . . exemption."). "The burden of invoking these exemptions

---

[4] Plaintiff's NYSHRL claims are additionally barred because the Court lacks subject matter jurisdiction to adjudicate state law discrimination claims that have been brought before the NYSDHR. *See York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) ("NY[S]HRL . . . claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court.").

rests upon the employer" and they "are narrowly construed against [it]." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (internal quotation marks omitted).[5]

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, [p]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than [40] hours in a given week."). "Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Lundy*, 711 F.3d at 114 (internal quotation marks omitted).

*Lundy*, *Nakahata*, and a third case—*Dejesus v. HF Mgmt. Servs., Inc.*, 726 F.3d 85 (2d Cir. 2013)—illustrate the contours of a plaintiff's burden in pleading an FLSA claim. In *Lundy*, the Second Circuit found that the plaintiffs failed to state an FLSA claim because they did not allege a "single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." 711 F.3d at 114; *see also Dejesus*, 726 F.3d at 88

---

[5] The burden of proving that an employee is a highly compensated individual differs slightly from the exemptions contained in 29 U.S.C. § 213(a)(1). During the time period relevant to this Action, an employee with "total annual compensation of at least $100,000 [was] deemed exempt" from the FLSA so long as he "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities of an executive, administrative[,] or professional employee." 29 C.F.R. § 541.601(a) (2013). The Department of Labor regulations explain that "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c). But even if an employee receives total compensation in excess of $100,000, "the employee is not automatically exempt—the employer still must show that the 'employee customarily and regularly performs any one or more of the exempt duties or responsibilities.'" *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 538 n.127 (S.D.N.Y. 2012) (quoting 29 C.F.R. § 541.601(c)).

("[The Second Circuit] reasoned that the *Lundy* plaintiffs had failed to allege that they worked uncompensated overtime because, although the employees went to some lengths to approximate the hours they typically worked, even setting out their typical breaks and shift lengths, the hours alleged did not add up to a claim that over [40] hours had been worked in any particular week."). In *Nakahata*, the plaintiffs alleged that they "regularly worked hours both under and in excess of [40] per week and were not paid for all of those hours." 723 F.3d at 199. The Second Circuit found that these allegations were insufficient to state a claim because they only "raise[d] the possibility that [the] [p]laintiffs were undercompensated." *Id.* at 201. The court held that the plaintiffs could not cross the plausibility threshold without alleging that they were scheduled to work 40 hours in a given week. *Id.*; *see also Dejesus*, 726 F.3d at 89 (explaining that in *Nakahata* the Second Circuit concluded that the plaintiffs' allegations were not specific enough to state an FLSA claim because "though they raised the possibility of an overtime claim, absent any allegation that [the] [p]laintiffs were scheduled to work [40] hours in a given week, they did not state a plausible claim for relief" (alteration and internal quotation marks omitted)). Finally, in *Dejesus*, the plaintiff pled that she worked more than 40 hours a week in "some or all weeks" without being paid "1.5 times her rate of compensation." 726 F.3d at 89 (internal quotation marks omitted). The Second Circuit found that these allegations were insufficient to state a claim because the plaintiff did nothing more than repeat the FLSA's statutory language and failed to "estimate her hours in any or all weeks or provide any other factual context or content." *Id.*

In this case, Plaintiff alleges that he was hired as a "full[-]time, permanent employee" in July 2013. (Compl. ¶ 17.) In February 2014, a senior vice president announced that all associates had to work an "extra 10 hours per week" and promised overtime pay to them even if

they were "exempt" employees.  (*Id.* ¶¶ 23–24.)  Plaintiff alleges that he was an exempt

employee.  (*Id.* ¶ 24.)  "Within a few weeks" of that meeting, another vice president reiterated

the overtime requirement.  (*Id.* ¶ 25.)  In May 2014, Plaintiff confronted Lister because he had

not been paid for his overtime hours.  (*Id.* ¶ 33.)  Lister told Plaintiff he was required to continue

working those hours.  (*Id.* ¶ 34.)

      Defendant argues that Plaintiff's FLSA claim must be dismissed because Plaintiff admits

he is an exempt employee and did not plead that he worked more than 40 hours in any

workweek.  (Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") 11 (Dkt. No.

24).)  While it is true that Plaintiff pled he is an exempt employee, (*see* Compl. ¶¶ 24–25), the

Court disagrees with Defendant's interpretation of Plaintiff's allegations.  Plaintiff could mean

that he was exempt from the FLSA's protections or he could mean that he was generally exempt

from Defendant's overtime requirements.  It is also possible Plaintiff was told that he was

exempt from the FLSA's protections when in reality he is not.  The burden for proving that

Plaintiff is an exempt employee rests with Defendant.  *Bilyou*, 300 F.3d at 222.  Defendant has

not met that burden here because it relies solely on Plaintiff's ambiguous allegation that he is an

exempt employee.[6]  Nor has Defendant even attempted to identify which exemption is applicable

here.  Accordingly, the Court declines to dismiss the Complaint on this ground.

      Whether Plaintiff has stated a plausible FLSA overtime claim is a closer call.  As in

*Lundy* and *Nakahata*, the *Complaint* does not allege that Plaintiff was scheduled to work 40

---

[6] The Court notes that even if Defendant attempted to demonstrate that Plaintiff was
exempt from the FLSA's overtime protections, a "claim may be dismissed on the basis of an
exemption only if the exemption appears on the face of the complaint."  *Chen v. Major League
Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (internal quotation marks omitted).  It is not
clear from the face of the Complaint that Plaintiff is exempt from the FLSA's overtime
requirements.

hours in any workweek.  Plaintiff alleges only that he was hired as a full-time employee, (Compl.

¶ 17), and was required to "work [10] extra . . . hours per week," (*id.* ¶ 24), from February 2014

through at least May 2014, (*id.* ¶¶ 23, 33–34).  These allegations are more detailed than those

presented in *Dejesus*, where the plaintiff merely repeated the FLSA's statutory language, but still

fall short of the requirements set forth in *Lundy* and *Nakahata*.

Plaintiff has, however, submitted the written decision of an Administrative Law Judge

("ALJ"), who ruled on Plaintiff's appeal from the Department of Labor's decision that he was

disqualified from receiving unemployment benefits, in opposition to the Motion.  (Pl.'s Aff'n in

Opp'n to Mot. To Dismiss Ex. 1 ("ALJ Decision") (Dkt. No. 27).)  The ALJ found that Plaintiff

"worked more than [40] hours weekly."  (ALJ Decision 3.)[7]  Defendant argues that the Court

cannot consider this document because it can only consider facts stated in the Complaint or in

documents attached thereto as exhibits or incorporated by reference.  (Def.'s Reply 6 (quoting

*Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 380–81 (S.D.N.Y. 2012).[8]  As a

general matter, Defendant has accurately stated the law.  But in cases where the plaintiff is

proceeding pro se, a court may consider "materials outside the complaint to the extent that they

are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3

(internal quotation marks omitted), including "documents that a pro se litigant attaches to his

---

[7] The page number refers to the pagination used in the ALJ Decision.

[8] Defendant also argues that the "New York Labor Law provides that unemployment insurance information should not be used in any court proceeding."  (Def.'s Reply 5 (citing N.Y. Labor Law § 537(1)(b)).)  The Court does not read that provision to bar it from considering the ALJ's decision in this case because that section refers to the use of "[u]nemployment insurance information" rather than decisions of an ALJ.  *See* N.Y. Labor Law § 537(1)(a)(i) (defining unemployment insurance information to include "wage reporting information obtained by the department from the state department of taxation and finance" and "information in the state directory of new hires").

opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted).  The ALJ's decision fits

within the exception to the general rule because it was attached to Plaintiff's opposition to

Defendant's Motion and is consistent with his claim that Defendant failed to compensate him for

working overtime.

Taken together, the Complaint and the facts contained in the ALJ's decision make it

plausible that Plaintiff worked in excess of 40 hours during certain workweeks—likely every

week from February 2014 through May 2014.  (Compl. ¶¶ 23, 33–34.)  Accordingly,

Defendant's Motion To Dismiss Plaintiff's FLSA claim is denied.

### 3.  Plaintiff's § 1983 Claim

Plaintiff alleges that Defendant's gross negligence deprived him of his constitutional and

civil rights in violation of 42 U.S.C. § 1983.  (*Id.* ¶ 143.)  Defendant argues that it cannot be sued

under that provision because it is not a state actor.  Under § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage . . . subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper proceeding for
> redress.

The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using

the badge of their authority to deprive individuals of their federally guaranteed rights and to

provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  In

applying § 1983 to private conduct, the Supreme Court has sought to "'preserve[] an area of

individual freedom by limiting the reach of federal law' and avoid[] the imposition of

responsibility on a State for conduct it could not control."  *Nat'l Collegiate Athletic Ass'n v.

Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936

(1982)).  "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is

thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.

2003); *see also Mascetti v. Zozulin*, No. 09-CV-963, 2010 WL 1644572, at *5 (D. Conn. Apr.

20, 2010) ("A [p]laintiff bringing a § 1983 action against a private actor bears the burden of

showing that the private actor's conduct constitutes state action.").  To constitute state action,

there must be an alleged deprivation of a federal right "caused by the exercise of some right or

privilege created by the State or by a rule of conduct imposed by the state or by a person for

whom the State is responsible," and "the party charged with the deprivation must be a person

who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937; *see also Hollander v.*

*Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (per curiam) (referring to and applying

the "two prong[]" test outlined in *Lugar*).

Although there is "no single test to identify state actions and state actors," *Cooper v. U.S.*

*Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (per curiam) (internal quotation marks omitted),

three main tests have emerged:

> For the purposes of [§] 1983, the actions of a nominally private entity are
> attributable to the state . . . (1) [when] the entity acts pursuant to the coercive
> power of the state or is controlled by the state ("the compulsion test"); (2) when
> the state provides significant encouragement to the entity, the entity is a willful
> participant in joint activity with the state, or the entity's functions are entwined
> with state policies ("the joint action test" or "close nexus test"); or (3) when the
> entity has been delegated a public function by the state ("the public function
> test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations

and some internal quotation marks omitted); s*ee also Hollander*, 624 F.3d at 34 (same).

Defendant is a private company.  (Def.'s Mem. 12.)  Therefore, to state a § 1983 claim,

Plaintiff must demonstrate that Defendant's conduct constitutes state action.  Plaintiff has failed

to meet that burden because he has not alleged that Defendant acted pursuant to the coercive

power of the state when it fired him, that Defendant and the state are participants in a joint

23

activity, or that Defendant has been delegated a public function by the state.  *See Widad v. Brooklyn Pub. Library*, No. 15-CV-4312, 2015 WL 7159796, at *4 (E.D.N.Y. Nov. 13, 2015) (dismissing § 1983 claim where the plaintiff failed to allege that the defendants were state actors); *Hopkins v. Seabrook*, No. 14-CV-600, 2015 WL 685220, at *2 (S.D.N.Y. Feb. 18, 2015) (dismissing § 1983 claim because the plaintiff "failed to allege any facts demonstrating that [the] [d]efendant acted under color of state law").  Accordingly, Plaintiff's § 1983 claim is dismissed without prejudice.

### 4.  Plaintiff's Conspiracy to Violate § 1983 Claim

Plaintiff alleges that Defendant conspired to deprive him of his constitutional and civil rights in contravention of § 1983.  (Compl. ¶ 146.)  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Because Defendant is not a state actor and Plaintiff has failed to identify any state actors with which Defendant conspired to violate his rights, the Complaint fails to state a § 1983 conspiracy claim.  *See Scalpi v. Town of East Fishkill*, No. 14-CV-2126, 2016 WL 858925, at *5 n.7 (S.D.N.Y. Feb. 29, 2016) ("Without any state actors with whom [the moving defendant] could have conspired to violate [the] [p]laintiff's civil rights, the Amended Complaint cannot state a § 1983 claim of conspiracy.").  Furthermore, Plaintiff merely alleges that "Defendant had illegally conspired to deprive [him] of his constitutional [and] civil rights."  (Compl. ¶ 86.)  This vague and conclusory allegation is insufficient to state a conspiracy claim.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the

plaintiff of his constitutional rights are properly dismissed.").  Accordingly, Plaintiff's § 1983

conspiracy claim is dismissed without prejudice.[9]

---

[9] It is possible that Plaintiff also sought to bring a conspiracy claim pursuant to 42 U.S.C. § 1985(3), which creates a federal cause of action where two or more persons conspire for the purpose of "depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws."  "To make a successful claim under [§] 1985, a plaintiff must allege facts showing class-based invidiously discriminatory animus behind the alleged conspiracy."  *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 472 (S.D.N.Y. 2006) (internal quotation marks omitted), *aff'd*, 266 F. App'x 31 (2d Cir. 2008); *see also Conrad v. Perales*, 818 F. Supp. 559, 563 (W.D.N.Y. 1993) ("A conspiracy to deprive persons of equal protection of the laws violates § 1985(3) only when it is motivated by a discriminatory animus against a protected class.").  As discussed above, Plaintiff raised discrimination claims in state court and those claims were deemed to be lacking in merit.  Plaintiff is thus collaterally estopped from raising a § 1985 claim in federal court because Plaintiff cannot succeed on a § 1985 claim in a manner consistent with the judgments of the NYSDHR and the NYS Supreme Court.  Those bodies have already determined that Plaintiff's discrimination claims are unfounded.

### III. Conclusion

In light of the foregoing analysis, the Court grants in part and denies in part Defendant's

Motion To Dismiss. Plaintiff may file an Amended Complaint, addressing the deficiencies

outlined in this Opinion with respect to his § 1983 and § 1983 conspiracy claims, within 30 days

from the date of this Opinion.[10] Plaintiff otherwise risks dismissal of those claims with

prejudice. The Clerk of Court is directed to terminate the pending Motion. (Dkt. No. 22.)

SO ORDERED.

DATED:      February **16**, 2017
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[10] Generally, a court should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). In this case, an amended pleading cannot cure the identified deficiencies with respect to Plaintiff's Title VII, ADEA, NYSHRL, § 1981, and § 1985 claims because Plaintiff is collaterally estopped from asserting those claims in federal court. Therefore, these claims are dismissed with prejudice. *See id.* (holding that repleading would have been futile because the problem with the plaintiff's causes of action was substantive and "better pleading [could] not cure it").