UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SIJI YU,

                         Plaintiff,

       v.

KNIGHTED LLC, an Intelligrated Company,

                         Defendant.

---

No. 15-CV-9340 (KMK)

OPINION & ORDER

---

Appearances:

Siji Yu
Hopewell Junction, NY
*Pro Se Plaintiff*

David A. Skidmore, Jr., Esq.
Jennifer A. Rulon, Esq.
Frost Brown Todd LLC
Cincinnati, OH
*Counsel for Defendant*

Sharon S. Cohen, Esq.
Shira Franco, Esq.
Davis & Gilbert LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Pro se Plaintiff Siji Yu ("Plaintiff") brings this Action pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., against Knighted LLC ("Knighted" or

"Defendant"), alleging that it failed to pay him for the overtime hours he worked. (*See generally*

Am. Compl. (Dkt. No. 38).)[1] Before the Court are the Parties' Cross-Motions for Summary

---

[1] Plaintiff's original Complaint included claims under Title VII of the Civil Rights Act
("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"),
29 U.S.C. § 621 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., 42

Judgment (the "Motions"). (*See* Def.'s Not. of Mot. (Dkt. No. 124); Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") (Dkt. No. 128).) For the reasons explained herein, Plaintiff's Motion is denied and Defendant's Motion is granted.

## I. Background

### A. Factual Background

The Court has described the allegations and procedural history of this case in two prior Opinions. *See Yu v. Knighted LLC*, No. 15-CV-9340, 2017 WL 666118 (S.D.N.Y. Feb. 16, 2017); *Yu v. Knighted LLC*, No. 15-CV-9340, 2018 WL 369191 (S.D.N.Y. Jan. 9, 2018). The Court therefore assumes familiarity with the dispute and will provide factual and procedural background only as relevant to the instant Motions.

The following facts are taken from Defendant's statement pursuant to Local Civil Rule 56.1, (Def.'s Local Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 126)), and Plaintiff's statement pursuant to Local Civil Rule 56.1, (Pl.'s Mot. 1–9 (Pl.'s Local Rule 56.1 Statement ("Pl.'s 56.1"))), and the admissible evidence submitted by the Parties.[2]

---

U.S.C. §§ 1981 and 1983, and the New York State Human Rights Law ("NYSHRL"). (*See* Compl. (Dkt. No. 1).) All claims have been dismissed with prejudice other than Plaintiff's FLSA claim. (*See* Dkt. Nos. 34, 70.)

[2] Plaintiff's Motion begins with a 56.1 Statement, and attaches exhibits numbered 6 through 13. (*See* Pl.'s Mot.) Plaintiff did not submit a memorandum of law in support of his Motion, but did submit a memorandum in opposition to Defendant's Motion. (*See* Dkt. No. 131.)

Additionally, Plaintiff did not submit a response to Defendant's 56.1 Statement. The Court will treat the facts asserted in Defendant's 56.1 Statement as undisputed to the extent they are supported by record evidence and Plaintiff's submissions do not contradict them.

Finally, both Plaintiff and Defendant have submitted exhibits that lack page numbers. For any exhibits without page numbers, the Court will cite to the ECF-generated page number at the upper right corner of each page.

### 1. Plaintiff's Background

Plaintiff earned his bachelor's degree in industrial engineering at Shanghai University in China, and subsequently received a master's degree in industrial engineering from the New Jersey Institute of Technology and a master's degree in computer science from the City College of New York. (Def.'s 56.1 ¶¶ 8–9, 11; Pl.'s Mot. Ex. 11 (Deposition of Siji Yu (May 11, 2018 & June 27, 2018) ("Yu Dep.")) 24–26.) When Plaintiff was hired by Knighted, he had twenty years of experience in information technology and over ten years of experience working in database administration and development. (Def.'s 56.1 ¶ 12; Def.'s 56.1 Ex. 4 ("Yu Resume").) Plaintiff specialized in databases and, in particular, relational databases, which are databases that have "a kind of relationship between each spreadsheet by spreadsheet or each table by table." (Def.'s 56.1 ¶¶ 13–14; Yu Dep. 166.)

### 2. Plaintiff's Employment with Defendant

Plaintiff worked for Knighted as a Senior Database Administrator from July 2013 to August 2014. (Def.'s 56.1 ¶ 1; Yu Dep. 38, 54, 108.) Knighted is a software company that designed a warehouse management system ("WMS") used by various businesses to manage their warehouses, by tracking items entering and exiting the warehouse and locating items within. (Def.'s 56.1 ¶¶ 3–4; Yu Dep. 184–85.) Knighted designed software to track this information by putting the information into databases that were administered by Plaintiff (the "WMS Databases"). (Def.'s 56.1 ¶ 5; Yu Dep. 166–67, 184–85.)

Plaintiff worked at a desk in an office at Knighted, and earned an annual salary of $115,000, plus performance-based incentives. (Def.'s 56.1 ¶¶ 18–19, Ex. 5 ("Yu Offer Letter");

Yu Dep. 38–39, 185–86.)[3]  His offer letter characterized Plaintiff as a "regular full-time exempt

employee."  (Yu Offer Letter 3.)  Plaintiff was responsible for managing Knighted's WMS

Databases, including keeping the Database running on schedule and improving its performance.

(Def.'s 56.1 ¶ 21; Yu Dep. 187–88.)  Most of Plaintiff's time was spent managing the WMS

Databases.  Plaintiff was fully responsible for the functioning of the WMS Databases and

worked on a team with his manager and colleagues to provide input on how to resolve issues that

impacted the system.  (Def.'s 56.1 ¶¶ 22–23; Yu Dep. 30–32, 41–43.)

In his role at Knighted, Plaintiff had to learn Knighted's computer systems, warehouse

management systems, and the particular relationship of those systems to the databases he

managed.  (Def.'s 56.1 ¶ 24; Yu Dep. 41–42.)  Plaintiff was simultaneously involved in multiple

projects, and would set priorities and communicate with different teams and managers to

coordinate plans.  (Def.'s 56.1 ¶¶ 26–27, 29; Yu Dep. 44–45.)  Plaintiff was required to

troubleshoot any problem that arose with Knighted's databases, and to provide recommendations

on better or more efficient ways to address technical issues based on his experience.  (Def.'s 56.1

---

[3] Plaintiff contends that he was "paid based on hours he had worked," and that if he worked shorter than an eight-hour day, his compensation would be reduced accordingly.  (Pl.'s 56.1 ¶¶ 25–26.)  However, the evidence Plaintiff submitted in support of his Motion contradicts this assertion.  Plaintiff's offer letter, which he included as part of his Exhibit 12, states, "[y]ou will be classified as a regular full-time exempt employee and your pay will be annualized at $115,000 per year, paid at regular payroll intervals."  (*See* Pl.'s Mot. Ex. 12, at 73.)  Plaintiff's paystubs reflect that he was consistently paid bimonthly in the amount of $4,791.67 for exactly 86.67 "hours" worked, (*see generally* Pl.'s Mot. Ex. 8 ("Paystubs")), with the exception of his first paycheck and his last two paychecks, the last of which appears to be a payout for unused vacation time after his termination, (*see id.* at 2, 32, 33).  Indeed, his initial and final paycheck state that he only worked 56 and 64 hours respectively for those pay periods, and each one notes, "Salaried Reg Hrs < 80," suggesting the reduction in hours and pay reflects the mid-pay period commencement and termination of his employment, rather than supporting Plaintiff's assertion that he was paid based on actual hours worked.  Plaintiff also testified that he was paid on a salaried basis.  (*See* Yu Dep. 38 ("Q. And the 110 to 115,000, that was your annual salary?  A. Year.  I don't remember exactly.  I just g[a]ve you this number."); Yu Dep. 189 ("Q. Were you paid on a salary basis when you worked at Knighted?  A. Yes.").)

¶¶ 28, 30; Yu Dep. 67.)  When database issues arose, Plaintiff would coordinate with his colleagues to check the system and identify any problems, and then would monitor the database and provide a solution.  (Def.'s 56.1 ¶¶ 31, 40–42; Yu Dep. 51, 104–05.)  Plaintiff was responsible for handling complex tasks, including monitoring system performance, deploying and modifying tables, upgrading the design and naming convention and table relationship of databases, and "cloning" databases, which involves copying a database to a different computer system.  (Def.'s 56.1 ¶¶ 47–48, 50; Yu Dep. 92–94, 101–02.)  Plaintiff also developed and designed a technical procedure inside the WMS Databases called a "stored or stop procedure" that was "better and more useful" than former procedures.  (Def.'s 56.1 ¶¶ 76, 78; Yu Dep. 58, 109–11.)

Plaintiff's work was highly valued at Knighted, and he helped the company to grow and increase its revenues.  (Def.'s 56.1 ¶¶ 7, 37–38; Yu Dep. 34–36, 109–11.)  Plaintiff's annual performance review rated his performance in the categories of accountability, action-oriented, attention to detail, business acumen, commitment to professional growth and development, communication, computer and software skills, conflict management, customer passion and commitment, decision quality, independence, initiative, innovation and continuous improvement, integrity and ethics, multitasking, negotiation and persuasion, problem-solving, quality and excellence, teamwork, and written communication.  (Def.'s 56.1 ¶ 52; Def.'s 56.1 Ex. 8 ("Yu Performance Review").)

At the time Plaintiff was hired, Knighted was outsourcing database management to another company.  Plaintiff's employment allowed Knighted to stop outsourcing this work, and all formerly outsourced work was replaced by Plaintiff's own work.  (Def.'s 56.1 ¶¶ 33–36; Yu Dep. 34–37.)  After Plaintiff joined Knighted, the number of Knighted's accounts grew from

fewer than 50 to approximately 200, due in part to Plaintiff's work as Senior Database
Administrator.  (Def.'s 56.1 ¶¶ 74–75; Yu Dep. 182–84.)

B.  Procedural History

Plaintiff filed his initial Complaint alleging violations of Title VII, the ADEA, the FLSA,
42 U.S.C. §§ 1981 and 1983, and the NYSHRL.  (*See* Compl. (Dkt. No. 1).)  After Defendant
filed a Motion to Dismiss, (Dkt. Nos. 22–24), the Court issued an Opinion and Order on
February 16, 2017, dismissing Plaintiff's Title VII, ADEA, NYSHRL, § 1981, and any potential
§ 1985 claims with prejudice on collateral estoppel grounds that could not be cured, (Op. &
Order on Def.'s Mot. To Dismiss ("2017 Opinion") 26 & n.10 (Dkt. No. 34)).  However, the
Court dismissed Plaintiff's § 1983 and § 1983 conspiracy claims without prejudice, giving
Plaintiff 30 days to file an Amended Complaint "addressing the deficiencies outlined in [the]
Opinion"—namely, that Plaintiff failed to plead state action.  (*Id.* at 22–26.)  The Court also
declined to dismiss Plaintiff's FLSA claim.  (*Id.* at 22.)  Plaintiff filed a Motion To Reconsider
the Court's collateral estoppel decision, (Dkt. No. 36), which the Court denied, (Dkt. No. 69).

On March 20, 2017, Plaintiff filed an Amended Complaint raising the same claims as the
initial Complaint.  (Am. Compl.)  Defendant filed a partial Motion To Dismiss the Amended
Complaint on June 5, 2017, arguing that Plaintiff was barred from bringing the discrimination
and retaliation claims that were dismissed with prejudice and that the Amended Complaint still
fails to state a § 1983 claim or a § 1983 conspiracy claim.  (Dkt. No. 52.)  On January 9, 2018,
the Court granted the Motion, dismissing all of Plaintiff's claims with prejudice except for the
FLSA claim.  (*See* Op. & Order on Def.'s Partial Mot. To Dismiss ("2018 Opinion") (Dkt. No.
70).)  Plaintiff filed a Motion for Reconsideration, (Dkt. No. 72), which the Court denied, (Dkt.
(minute entry for Feb. 14, 2018)).

The Parties filed Cross-Motions for Summary Judgment on the remaining FLSA claim on October 15, 2018. (*See* Def.'s Not. of Mot.; Def.'s 56.1; Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 125); Pl.'s Mot.) The Parties filed their respective responses on November 16, 2018. (*See* Def.'s Mem. in Opp'n to Pl.'s Mot. ("Def.'s Opp'n") (Dkt. No. 129); Def.'s Resp. to Pl.'s Rule 56.1 Statement ("Def.'s 56.1 Resp.") (Dkt. No. 130); Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n") (Dkt. No. 131).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence

that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d

736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the

statements 'must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated.'"  *DiStiso*,

691 F.3d at 230 (quoting Fed. R. Civ. P. 56(c)(4)).

Finally, the Second Circuit has instructed that when a court considers a motion for

summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848

F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at

*7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se

litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation

marks omitted).  And, "the failure to oppose a motion for summary judgment alone does not

justify the granting of summary judgment."  *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also*

*Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the

legal validity of an entry of summary judgment should . . . be[] made in light of the opposing

party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise

relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald

assertions unsupported by evidence . . . are insufficient to overcome a motion for summary

judgment."  *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe*

*Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks

omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2

(S.D.N.Y. July 31, 2017) (same).

## B. Analysis

Plaintiff's sole remaining claim in this Action is that he was denied promised overtime payments in violation of the FLSA. (*See* Am. Compl. ¶¶ 153–54; 2017 Opinion 22.) Defendant moves for summary judgment on the basis that Plaintiff was an exempt employee under the FLSA and therefore not entitled to overtime pay. (Def.'s Mem. 9.) Specifically, Defendant argues that Plaintiff qualified as an exempt employee under three enumerated exceptions: (1) highly compensated employees; (2) employees who work in a bona fide administrative capacity; and, (3) employees who work as a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker. (*See id.*) Construing Plaintiff's submissions liberally, Plaintiff moves for summary judgment on the basis that he was misclassified as an exempt employee, and was in fact an hourly employee entitled to overtime pay for hours worked in excess of 40 hours per week. (Pl.'s 56.1 ¶¶ 25–31, 49.)

### 1. Applicable Law

"Congress enacted the FLSA in 1938 to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010) (quoting 29 U.S.C. § 202(a)). "Section 207(a)(1) of [the] FLSA requires that, 'for a workweek longer than [40] hours,' an employee who works 'in excess of' [40] hours shall be compensated for that excess work 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). This general rule does not apply, however, to several types of employees, including individuals who are employed "in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1); *see Reiseck*, 591 F.3d

at 104, certain highly compensated employees, 29 C.F.R. § 541.601(a); *see Bellone v. Kraft Power Corp.*, No. 15-CV-3168, 2016 WL 2992126, at *4 (E.D.N.Y. May 23, 2016) ("The FLSA provides numerous exemptions to the time-and-a-half overtime requirement, one of which is the 'highly compensated employees' . . . exemption." (citation omitted)), and employees employed as computer systems analysts, programmers, software engineers, or other similarly skilled positions, 29 U.S.C. § 213(a)(17); *see Sethi v. Narod*, 974 F. Supp. 2d 162, 178–79 (E.D.N.Y. 2013) (explaining the computer employee exemption). "The burden of invoking these exemptions rests upon the employer," and they "are narrowly construed against [it]." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citation and quotation marks omitted). "The exemption question under the FLSA is a mixed question of law and fact. The question of how the employee[] spent [his] working time is a question of fact. The question whether [his] particular activities excluded [him] from the overtime benefits of the FLSA is a question of law." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (citations, alterations, and quotation marks omitted).

### 2. Application

Defendant argues that Plaintiff was an exempt employee as a matter of law based on three FLSA exemptions: highly compensated employees, employees who work in a bona fide administrative capacity, and highly skilled computer employees. (*See* Def.'s Mem. 9.)

During the time period relevant to this Action, an employee with "total annual compensation of at least $100,000 [was] deemed exempt" from the FLSA so long as he "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities of an executive, administrative[,] or professional employee." 29 C.F.R. § 541.601(a) (2013); *see also Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 149 (2d Cir. 2013) (noting that § 541.601

"deals with those employees who earn over $100,000 annually").  "To qualify for the [highly compensated employee] exemption, an employee must: (1) have total annual compensation of at least one hundred thousand dollars ($100,000); (2) 'customarily and regularly perform *any one or more* of the exempt duties or responsibilities of an executive, administrative, or professional employee'; and (3) have a 'primary duty that *includes* performing office or non-manual work.'" *Bellone*, 2016 WL 2992126, at *4 (quoting § 541.601).

The Department of Labor regulations explain that "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties."  29 C.F.R. § 541.601(c); *see also Bellone*, 2016 WL 2992126, at *4 (same).  But even if an employee receives total compensation in excess of $100,000, "the employee is not automatically exempt—the employer still must show that the 'employee customarily and regularly performs any one or more of the exempt duties or responsibilities.'" *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 538 n.127 (S.D.N.Y. 2012) (quoting § 541.601(c)).

With respect to the first prong of the analysis, the "salary" prong, "[t]he determination of an employee's 'total annual compensation,' may include 'commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period.'" *Magnoni v. Smith & Laquercia, LLP*, 661 F. Supp. 2d 412, 415 (S.D.N.Y. 2009) (quoting § 541.601(b)(1)).  With respect to the second prong, an employee meets the "exempt duties" requirement if he or she regularly performs duties that fall under the executive, administrative, or professional employee exemptions outlined in Subparts B, C, and D of 29 C.F.R. § 541.  Duties exempt under the executive employee category include, inter alia, directing the work of two or more other employees, and having the authority to hire or fire other employees.  *See* 29 C.F.R.

§ 541.100(a).  Duties that fall under the administrative employee exemption include those that are "directly related to the management or general business operations of the employer or the employer's customers," *see id.* § 541.200(a)(2), defined to include "internet and database administration," *id.* § 541.201(b).  Duties that fall within the professional employee exemption are those "[r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  *Id.* § 541.300(a)(2)(i).  Finally, with respect to the third prong, § 541.601 "requires only that Plaintiffs' primary duty consist in part of office or non-manual work, not that their primary duty consist entirely of such work."  *Haas v. Verizon New York, Inc.*, No. 13-CV-8130, 2015 WL 5785023, at *4 (S.D.N.Y. Sept. 30, 2015).

### a.  Plaintiff's Salary

With respect to Plaintiff's salary, even construing all evidence in Plaintiff's favor, he has failed to create a factual dispute with regard to his status as a salaried employee earning $115,000 annually.  Plaintiff asserts that he was "paid based on hours he had worked," and that had he not consistently worked an 8-hour day, "his compensation would be reduced by hour(s) he had not worked."  (Pl.'s 56.1 ¶¶ 25–26.)  However, the record evidence submitted by Plaintiff demonstrates the opposite.  Plaintiff testified in his deposition that he earned an annual salary of either $110,000 or $115,000, paid on a salary basis.  (*See* Yu Dep. 38 ("Q. And the 110 to 115,000, that was your annual salary?  A. Yeah.  I don't remember exactly.  I just g[a]ve you this number."); Yu Dep. 189 ("Q. Were you paid on a salary basis when you worked at Knighted?  A. Yes.").)  His offer letter similarly states, "[y]ou will be classified as a regular full-time exempt employee and your pay will be annualized at $115,000 per year, paid at regular payroll intervals."  (Yu Offer Letter 3.)  Moreover, this offer letter makes no mention of an hourly rate

of pay, and contains no indication that Plaintiff's paycheck would be increased or reduced based on hours worked. Although the offer letter states that "[r]egular work hours are Monday–Friday, 8:30 a.m. to 5:30 p.m.," (*id.*), this alone does not make an employee non-exempt unless the employee is also "docked pay for missing a fraction of a workday," *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615 (2d Cir. 1991) (collecting cases). Plaintiff's own testimony indicates that, rather than have his pay docked for days he worked fewer than eight hours, Plaintiff would often work extra hours on certain days and then work fewer hours on other days, (*see* Yu Dep. 190–92), without any impact to his paycheck, (*see generally* Paystubs). No record evidence has been submitted demonstrating that Plaintiff's pay was reduced when he worked fewer than 40 hours in a week. As already discussed, Plaintiff's paystubs reflect that he was consistently paid bimonthly in the amount of $4,791.67 for exactly 86.67 "hours" worked, (*see* Paystubs), with the exception of his first paycheck and his last two paychecks, the last of which appears to be a payout for unused vacation time after his termination, (*id.* at 2, 32, 33). Indeed, his initial and final regular paycheck state that he only worked 56 and 64 hours respectively for those pay periods, and each one notes, "Salaried Reg Hrs < 80," suggesting the reduction in pay reflects the mid-pay period commencement and termination of his employment, rather than supporting Plaintiff's assertion that he was paid based on actual hours worked. Furthermore, § 541.602(b), which sets forth exceptions to the prohibition against deductions from pay of salaried employees, "make[s] clear that full-day deductions are permissible," *Zelenika v. Commonwealth Edison Co.*, No. 09-CV-2946, 2012 WL 3005375, at *11 (N.D. Ill. July 23, 2012), and no evidence has been

submitted suggesting that the deductions from Plaintiff's first and last paycheck were for fractions of a day. [4]

Although Plaintiff points to the fact that he was required to record hours worked and submit them for approval in order to receive his pay, (*see* Pl.'s Opp'n 2–3), "the fact that an employer keeps records of its employee's hours, by itself, has no bearing on that employee's status as a salaried worker," *Adams v. Niagara Mohawk Power Corp.*, No. 02-CV-1353, 2008 WL 4527694, at *6 (N.D.N.Y. Sept. 30, 2008) (citation omitted); *see also* DOL Wage & Hour Division Opinion Letter, 2003 WL 23374601, at *2 (July 9, 2003) ("[T]he tracking or accounting of actual hours worked by exempt employees does not violate the 'salary basis' requirements."). Plaintiff's own belief that he would have been paid less were he to work a fraction of a work day, absent "any rule, practice, or example based on personal experience that provide the basis for his belief," is insufficient to create a dispute of fact as to whether Plaintiff was compensated on a salaried basis. *Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 65 (E.D.N.Y. 2011) (granting summary judgment for the defendant where "payment records reflect a calculation method that is not inconsistent with a salary basis of payment, and . . . there is no evidence that the [p]laintiff was or would have been subject to improper deductions"), *aff'd*, 730 F.3d 146 (2d Cir. 2013); *see also Yourman v. Giuliani*, 229 F.3d 124, 129 (2d Cir. 2000) (finding summary judgment was properly granted where "the appellants ha[d] shown only that [impermissible] deductions were permitted, not that they would in fact be made in specified circumstances"); *Ahern v. County of Nassau*, 118 F.3d 118, 122 (2d Cir. 1997) (holding employees were exempt where "the plaintiffs

---

[4] Notably, Plaintiff's total recorded hours for his first and last paychecks are each a multiple of eight, further suggesting that he was paid for the number of full 8-hour days that he worked during those pay periods.

could not point to any rule that stated that if they committed a specific infraction, their pay would be docked").

Plaintiff asserts that in February 2014, Gregory Cronin ("Cronin"), an executive vice president at Knighted, directed that all employees, including exempt employees, must work at least 50 hours per week to deal with a backlog of work, and promised that they would all receive overtime pay for the extra hours. (Pl.'s 56.1 ¶¶ 1–5.) In support, Plaintiff offers the interrogatory responses of Daniel Napoli ("Napoli"), a senior vice president at Knighted, who confirmed that he recalled Cronin saying all employees would receive overtime pay, (Pl.'s Mot. Ex. 6, at 7), Plaintiff's own testimony that Cronin made this promise, (Yu Dep. 118), and an email sent to Knighted employees confirming Cronin's announcement that 50 hours a week would be required (although not the alleged promise of overtime pay to exempt employees), (Pl.'s Mot. Ex. 12, at 64). Defendant objects that Plaintiff "has not set forth any admissible evidence to support" these assertions, but does not explain the basis for its objection to the announcement's admissibility. (Def.'s 56.1 Resp. ¶ 1.)

However, even assuming that Cronin promised all employees additional pay for working longer than the typical 40-hour week, Cronin's promise did not "explicitly overrule[] exempt status for all employees" as Plaintiff argues, (Pl.' 56.1 ¶ 50), because whether the nature of Plaintiff's employment "excluded [him] from the overtime benefits of the FLSA is a question of law." *Ramos*, 687 F.3d at 558 (citations and quotation marks omitted). And, under the law, "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). Thus, Defendant was entitled to pay Plaintiff additional compensation for

extra hours worked without altering his status as an exempt employee; the fact that Defendant failed to do so after promising overtime pay may, at best, violate an oral contract Cronin made with Knighted's employees, but does not violate the FLSA. *See Stein v. Guardsmark, LLC*, No. 12-CV-4739, 2013 WL 3809463, at *5 (S.D.N.Y. July 23, 2013) ("[T]he payment of overtime does not compromise a finding that an employee was paid on a 'salary basis.'" (quoting § 541.604(a))); *Anani*, 788 F. Supp. 2d at 70 ("[P]roviding salaried employees with additional compensation for overtime hours specifically as an incentive to take on additional work has been frequently upheld as a legitimate business decision." (collecting cases)); *Wright v. Aargo Sec. Servs., Inc.*, No. 99-CV-9115, 2001 WL 91705, at *5 (S.D.N.Y. Feb. 2, 2001) ("[C]ourts have consistently held that an employee's receipt of additional amounts, including overtime, above his predetermined base compensation does not destroy the employee's otherwise valid salary status."). Thus, there is no record evidence that contradicts Defendant's supported assertion that Plaintiff was a salaried employee paid more than $100,000 annually, as required to establish the first prong of the highly compensated employee exemption.

### b. Performance of Exempt Duties

With respect to the second prong of the highly compensated employee exemption, the record evidence, including Plaintiff's own testimony, demonstrates that there is no dispute of fact that Plaintiff "customarily and regularly perform[ed] . . . one or more of the exempt duties or responsibilities." *Kadden*, 910 F. Supp. 2d at 538 n.127. Under 29 C.F.R. § 541.201(b), duties that fall under the administrative exemption are "not activities that involve what the day-to-day business specifically sells or provides, [but] rather . . . tasks that every business must undertake in order to function." *Sorrentino v. Stephen P. Esposito, M.D., P.C.*, No. 08-CV-1870, 2010 WL 11627323, at *3 (E.D.N.Y. Jan. 7, 2010) (citation and quotation marks omitted). Among the

"duties or responsibilities of an executive, administrative[,] or professional employee" that qualify a worker as an exempt employee under the highly compensated employee exemption, *see* 29 C.F.R. § 541.601(a)(2), are "computer network, internet[,] and database administration," *see id.* § 541.201(b).

Plaintiff does not make any argument with respect to this prong of the analysis. In fact, Defendant's argument that Plaintiff's activities preclude him from the FLSA's overtime requirements relies extensively on Plaintiff's own testimony about the significance of his role managing Knighted's databases. (*See generally* Def.'s 56.1 ¶¶ 18, 20–51.) As a highly skilled worker with two master's degrees, Plaintiff was engaged primarily, if not exclusively, in advanced technical work, and Plaintiff testified that his work had a significant impact on company performance and required judgment and technical expertise. (*See* Yu Dep. 31 ("I pretty much [took] full responsibility for . . . the databases . . . [w]ith a team and the whole system."), 36 ("Q. So your contributions really helped the company grow. A. Yeah. For my part, yes."), 37–38 ("[T]hey [saw that] my contribution really can replace the outsourcing."), 44–45 (explaining that Plaintiff's projects included "new installation[s], new and troubleshooting for customer[s], troubleshooting for developer[s], [and] design a new one," and describing himself as "professionally trained to handle this kind of multitasking"), 47–48 ("Q. You were there to use your expertise in databases. A. Yeah."), 109–11 (explaining that Plaintiff "increase[d] Knighted revenues" as a result of his "superior analytical skill contribution"),174 (describing his employment as "focus[ed] on technical area for database"), 183–84 (confirming that Knighted's "growth and expansion" to a larger office and a substantial increase in accounts handled "was due to [Plaintiff's] work"); 186–87 (confirming that managing the database system "took up most of [Plaintiff's] time at Knighted").) Any "minimization of the level of [Plaintiff's] work"

in his summary judgment submissions is thus "directly contradicted by his own assessment of his accomplishments" in his testimony. *Mock v. Fed. Home Loan Mortg. Corp.*, No. 13-CV-1292, 2014 WL 3545096, at \*2, 7 (E.D. Va. July 15, 2014) (granting summary judgment to defendant under both highly compensated and administrative employee exemptions where the plaintiff's own testimony and evidence demonstrated that his "non-manual job duties [were] directly related to [the defendant's] business operations—specifically, the operation of its IT infrastructure"), *aff'd*, 589 F. App'x 127 (4th Cir. 2014).

Here, Plaintiff's testimony makes clear that he "performed a variety of tasks vital to the functioning of" Knighted's business operations as required to meet the second prong of the highly compensated employee exemption. *Sorrentino*, 2010 WL 11627323, at \*3. Among his responsibilities, Plaintiff "took full responsibility" for Knighted's WMS databases, (Yu Dep. 31), provided support to customers using the WMS database, including performing installation and troubleshooting services, (*id.* at 41–43), troubleshooted issues for the WMS database developer, (*id.* at 44), designed new systems, (*id.*), upgraded the WMS database system, (*id.*), resolved database issues escalated by the customer support department, (*id.* at 46–47), provided recommendations to the WMS developer as to "better or more efficient way[s]" to design the databases, (*id.* at 48), and developed technical "procedures" for the databases that improved their function, (*id.* at 57–58). As a matter of law, these tasks, which Plaintiff characterized as important contributions that led to the growth of the company and the ability to replace the outsourcing of certain tasks with Plaintiff's work, (*see id.* at 34–36, 109–11), demonstrate that Plaintiff "customarily and regularly" performed "one or more" of the exempt duties of an administrative or professional employee, 29 C.F.R. § 541.601. *See Sorrentino*, 2010 WL 11627323, at \*3–4 (granting summary judgment for defendant employer where the plaintiff's

work involved managing payroll, processing accounts receivable, and billing clients); *see also Galdo v. PPL Elec. Utilities Corp.*, No. 14-CV-5831, 2016 WL 454416, at *5 (E.D. Pa. Feb. 5, 2016) (holding certain employees were exempt as highly compensated employees where their "duties include[d] evaluating and controlling [the defendant's] electrical grid, documenting maintenance and work activities, and executing emergency procedures when needed"); *Haas*, 2015 WL 5785023, at *4–8 (holding that installation and maintenance managers for a company that provides voice, internet, and television services who earned in excess of $100,000 per year were exempt under the highly compensated employee exemption and granting summary judgment in favor of the defendant); *Zelenika*, 2012 WL 3005375, at *13 (holding employees exempt as highly compensated employees whose tasks included "monitoring and responding to problems with [the defendant's] electrical distribution system in collaboration with field crews"); *Massaro v. N.Y. Times, Inc.*, No. 87-CV-957, 1988 WL 59637, at *4 (S.D.N.Y. June 6, 1988) (finding the plaintiff's employment as "a member of a team specifically recruited by [the defendant] to design, develop and implement an advanced computerized information system" fell within the administrative exemption); *cf. Dean v. Priceline.com, Inc.*, No. 00-CV-1273, 2001 WL 35962826, at *6 (D. Conn. Apr. 6, 2001) (denying the plaintiff's motion for writ of attachment because plaintiff, a senior database administrator, could not establish probable cause he would prevail on overtime compensation claim where "the credible evidence and testimony suggests that [the defendant] probably will be successful in showing that [the] plaintiff is an exempt employee under either the computer related professional employee exemption or the administrative employee exception . . . .").[5]

---

[5] Although Defendant did not expressly reference the professional exemption, Plaintiff's work likely qualifies as that of a professional employee as well, which exempts employees who perform work "requiring advanced knowledge in a field of science or learning customarily

Additionally, Plaintiff's work involved troubleshooting problems for customers and developing programs that help clients use Knighted's system more efficiently, which falls within the administrative exemption. *See Nelson v. Sabre Cos. LLC*, No. 15-CV-314, 2018 WL 3543523, at *8 (N.D.N.Y. July 23, 2018) (characterizing "running [the company's] operations and maintaining the customer relationship on site" as "directly related to the general business operations of [the company] and its customers"); *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 428 (S.D.N.Y. 2013) ("If indeed [the] [p]laintiff's primary duties included tasks related to vendor relations, customer communications and support, and order logistics, a jury could find that [the] [p]laintiff's duties were directly related to [the] [d]efendant's general business operations."); *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1066–67 (D. Minn. 2011) (holding that "assisting in implementing and configuring . . . software to run the client's business in a more efficient way, as opposed to just servicing an existing software system," fell within the administrative exemption); *Koppinger v. Am. Interiors, Inc.*, 295 F. Supp. 2d 797, 802 (N.D. Ohio 2003) (granting summary judgment for the defendant based on administrative exemption where the plaintiff "was responsible for [a] computer system from end to end, a computer system that was clearly integral to [the] defendant's general business operations," and the plaintiff's work "was comprehensive in nature, and ranged from investigating problems, to considering possible solutions and implementing, in plaintiff's opinion, the best solution"). Therefore,

---

acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a). The professional employee exemption defines "field of science or learning" to include engineering, *id.* § 541.301(c), the subject of one of Plaintiff's master's degrees, (Def.'s 56.1 ¶ 10). Plaintiff also testified repeatedly that he was hired for his expertise gained through advanced education, specialized training, and his extensive job experience. (*See* Yu Dep. 47, 49–50, 63–64, 66, 91, 109–11.)

Plaintiff's duties with Knighted fulfill the second prong of the highly compensated employee analysis.

### c. Non-Manual Office Work

Finally, "29 C.F.R. § 541.601(d) requires . . . that [a] [p]laintiff['s] primary duty consist in part of office or non-manual work." *Haas*, 2015 WL 5785023, at *4. The record makes clear that Plaintiff only performed office work, so there is no dispute of fact with respect to this provision. (Def.'s 56.1 ¶ 18; Yu Dep. 185–86.) *See Haas*, 2015 WL 5785023, at *6 (granting summary judgment where "no reasonable juror could conclude that [the] [p]laintiffs' [work] do[es] not 'include performing office or non-manual work'" (alteration omitted) (quoting 29 C.F.R. § 541.601(d))).

Because Plaintiff's employment with Knighted meets all three prongs of the analysis, Defendant is entitled to summary judgment under the highly compensated employee exemption.[6]

### III. Conclusion

In light of the foregoing analysis, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment. The Clerk of the Court is directed to terminate the pending Motions, (Dkt. Nos. 124, 128, 131), enter judgment for Defendant, close this case, and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

DATED:     May 13, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[6] Because Defendant is entitled to summary judgment based on the highly compensated employee exemption, the Court need not address Defendant's argument that Plaintiff is also exempt under the administrative employee and computer employee exemptions.